UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE, an individual, JANE DOE, an individual, and JUNIOR DOE, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; UR JADDOU, in her official capacity as Director of USCIS; DEPARTMENT OF STATE; ANTONY BLINKEN, in his official capacity as Secretary of State; U.S. EMBASSY IN KABUL, AFGHANISTAN; and UNKNOWN CONSULAR OFFICERS;<br><br>Defendants. | Case No. 2:21-cv-01128-RAJ<br><br>ORDER |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order or Preliminary Injunction. Dkt. # 13. For the reasons set forth below, the Court DENIES the motion.

ORDER – 1

## II. BACKGROUND

Plaintiffs are a family from Afghanistan consisting of Plaintiff John Doe,[1] his wife Jane Doe, and their oldest son, Junior Doe, and five other children. Dkt. # 1 ¶ 38. Plaintiffs Jane Doe ("Jane") and Junior Doe ("Junior") live in Kabul, Afghanistan. *Id.* ¶ 39. Plaintiff John Doe ("John") received asylum in the United States on March 6, 2018 and became a lawful permanent resident on July 15, 2018. *Id.* ¶ 41. His five minor children were granted Visas 92 as children of an asylee, and now live with John in King County, Washington. *Id.* ¶¶ 40-41. *Id.* But Jane and Junior, still in Afghanistan, were not issued Visas 92. *Id.* ¶ 2-3. Both had approved I-730 petitions for follow-to-join derivative asylee. *Id.* ¶ 10-11. Yet Defendants Unknown Consular Officers at Defendant U.S. Embassy in Kabul, who process Form I-730 petitions for follow-to-join derivatives of asylees, found Jane and Junior ineligible for issuance of Visas 92. *Id.* ¶ 2-3. According to Defendants, Jane and Junior were inadmissible because they made a willful misrepresentation about Junior's date of birth. *Id.* ¶ 3. Plaintiffs argue that any misrepresentation about Junior's birthday was based on an incorrect calculation of his age based on the Gregorian calendar instead of the Afghani calendar. *Id.* ¶ 51.

After refusing to issue Visas 92, Plaintiffs allege that Defendants Unknown Consular Officers failed to return Jane and Junior's cases via the National Visa Center to USCIS for further adjudication as required. *Id.* ¶¶ 2-3. Through their lawyer, Plaintiffs have since attempted to seek administrative redress on the "procedural and legal errors" underlying the denial of their visas to no avail. *Id.* ¶ 4.

On August 14, 2021, the United States began an evacuation of United States citizens, lawful permanent residents and their eligible family members, as well as several other categories of people. Dkt. # 16 at 5-6. On August 20, 2021, in the wake of the

---

[1] The Court found good cause to grant Plaintiffs leave to proceed under pseudonyms based on their fear of retaliation by the Taliban. Dkt. # 15.

ORDER – 2

Taliban resurgence and ensuing emergency situation in Kabul, Afghanistan, Plaintiffs filed an *Ex Parte* Motion for a Temporary Restraining Order and/or Preliminary Injunction and Emergency Motion for Mandamus Relief.  Dkt. # 5.  Plaintiffs requested that the Court take immediate action.  Plaintiffs brought claims under the Administrative Procedures Act ("APA"), the Mandamus Act, the Fifth Amendment, and the Equal Protection Clause focused on Defendants' alleged failure to adjudicate Jane and Joe's I-730 petitions.  Dkt. # 1 ¶¶ 85-123.  They requested an order requiring Defendants to issue Jane and Junior Visas 92 and authorizing their immediate travel to the United States "to avoid their imminent imprisonment, torture, or loss of life and to correct the mistakes and improper procedures of the Defendants."  *Id.* ¶ 6; Dkt. # 5.  Two days later, pursuant to a joint stipulation, Plaintiffs withdrew their motion.  Dkt. # 10.

  In the stipulation, the parties stated that the State Department had contacted Plaintiffs by email on August 19, 2021 to inform them that they were eligible for evacuation assistance from Afghanistan.  *Id.* ¶ 2.  Although the State Department could not guarantee that any individual would be able to enter the Hamid Karzai International Airport ("HKIA") in Kabul, board a flight, or travel, the State Department did "not anticipate that the denials in question w[ould] be a specific barrier at th[at] time."  *Id.* ¶ 3.  In addition, the State Department would provide the United States Citizenship and Immigration Services ("USCIS") with the information needed for USCIS to review Junior's eligibility for the I-730 given the consular officer's finding.  *Id.*  The parties stated that USCIS would review Junior's I-730 petition for possible termination by August 27, 2021 and either reaffirm USCIS's prior petition approval or issue a Notice of Intent to Terminate.  *Id.* ¶ 4.  USCIS would forward any decision or notice to counsel for the Government by email who would forward it to Plaintiffs' counsel.  *Id.*  Finally, the stipulation stated that the State Department favorably resolved Jane's eligibility, rendering further USCIS review unnecessary.  *Id.* ¶ 3.  Plaintiffs' motion for temporary injunction was thereby terminated.

ORDER – 3

Early on August 27, 2021, Plaintiffs filed a second motion for emergency injunctive relief. Dkt. # 13. Plaintiffs claim that despite the State Department's representation that the denial of the I-730 petitions would not be a specific barrier to entry, Jane and Junior were denied entry. *Id.* at 3. Plaintiffs allege that they were able to successfully reach the gates of HKIA on August 25, 2021, at approximately 2:00 A.M. local time, and presented their HKIA pass, national identity cards, copies of their passports, Form I-730 approval notices, a copy of John's green card, and a copy of the Joint Stipulation. *Id.* at 4. They could not present their passports because, Plaintiffs allege, they had been retained by Unknown Consular Officers on May 20, 2021, after finding Jane and Junior ineligible for Form I-730 petition, derivative asylee follow-to-join, benefits. *Id.*; Dkt. # 14 at 2. Plaintiffs allege that the guard denied Jane and Junior entry to the airport because they did not have their original passports. Dkt. # 13 at 4. Despite their efforts to explain that their passports were retained by Defendants DOS, the United State Embassy in Kabul, and Unknown Consular Officers, the guard refused them entry and stated that the Department of State requires them to have their actual valid passport or a printed visa for all entries. *Id.*; Dkt. # 14 at 2.

Given these challenges, Plaintiffs filed the pending emergency motion requesting the Court to order Defendants to provide Jane and Junior with their passports or an alternative means to evacuate Afghanistan. Dkt. # 13 at 14. The same day the motion was filed, August 27, 2021, the Court held a phone conference with the parties to discuss the status of the motion. Dkt. # 15. Given the fluid circumstances in Kabul and the August 31, 2021 deadline for military operations to end in Afghanistan, Dkt. # 16 at 5, the Court set forth a condensed briefing schedule. LCR 65(b)(5). Plaintiffs were directed to file a proposed order which sets forth their specific relief requested by 3:00 P.M. on August 27, 2021. Counsel for the Government was directed to respond to the motion for temporary restraining order by 6:00 P.M. on August 28, 2021. Having reviewed all briefing, the Court now addresses the emergency motion.

ORDER – 4

### III. LEGAL STANDARD

Preliminary injunctions and temporary restraining orders are governed by the same standard. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). As an extraordinary remedy, it is "never awarded as of right." *Id.* The legal standard for a preliminary injunction requires plaintiffs to show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 22. The Court will begin its analysis with the first *Winter* factor.

### IV. DISCUSSION

Defendants argue that the Court should deny Plaintiffs' emergency motion for several reasons. Dkt. # 16 at 10-20. The argue that (1) the Department of State has already provided Plaintiffs with the evacuation relief available at this time and is unable to guarantee evacuation due to ongoing security threats; (2) the Court lacks jurisdiction to enjoin the Department of Defense, a non-party to this litigation; (3) the Court lacks authority to return passports to Plaintiffs because such relief is not based on claims pled in the Complaint and there is no statutory authority by which to do so; (4) Plaintiffs' motion raises nonjusticiable political questions because it would require the Court to review discretionary foreign policy decision reserved for the Executive Branch or Congress; and (5) Plaintiffs cannot establish the *Winter* factors required for preliminary injunctive relief. *Id.* The Court will address the *Winter* factors first.

A. **Standard for Mandatory Preliminary Injunction**

The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp.*

ORDER – 5

*v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Plaintiffs here request affirmative action that goes beyond simply maintaining the status quo. A motion for such mandatory preliminary relief "is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993); *see also Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (holding that when party "seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite,* courts should be extremely cautious about issuing a preliminary injunction").

B. **Likelihood of Success on the Merits**

Plaintiffs contend that they are likely to establish that Defendants violated the APA and their constitutional rights by failing to return Jane and Joe's passports. Dkt. # 13 at 9. Plaintiffs invoke the APA and the Mandamus Act to compel Defendants "to cease violating their policies and procedures and to return the Plaintiffs' passports." *Id.* at 10. They assert that the Court has subject matter jurisdiction over the claim that an agency "has unlawfully withheld or unreasonably delayed the return of Plaintiffs' passports." *Id.* Defendants, however, argue that Plaintiffs' mandamus and APA claims in the Complaint are moot because Defendants provided the requested relief. Dkt. 16 at 16. Specifically, Plaintiffs claimed in their Complaint that Defendants had not properly processed their I-730 petitions and moved the Court to compel Defendants to immediately adjudicate Jane and Junior's I-730 petitions. Dkt. # 1 at 20. Defendants agreed to do so. Dkt. # 10 ¶ 3-4. USCIS has now re-affirmed the I-730 petitions. Dkt. # 16 at 17; Dkt. # 18-1 at 2-3.

Faced with the significant security challenges on the ground in Kabul, Plaintiffs' requested relief did not achieve Plaintiffs' ultimate goal of evacuation. Plaintiffs now seek additional relief aimed toward ensuring Jane and Junior are evacuated. *See* Dkt. # 19. Specifically, Plaintiffs request that the Department of State (1) include Jane and Junior's names on a manifest list for evacuation in a priority "in a priority equivalent to

ORDER – 6

or greater than the immediate family members of a Lawful Permanent Resident of the United States with approved petitions"; (2) provide the manifest list to all coordinating entities, including the non-party Department of Defense; (3) issue Jane and Junio a digital gate pass and instructions to allow them to board an evacuation convoy; and (4) issue Jane and Junior documents that "can guarantee the identity and travel" of Jane and Junior through security checkpoints. *Id.*

The requested relief goes well beyond the claims pled in the Complaint. Although Plaintiffs alleged in the Complaint that Defendants failed to return Jane and Junior's passports, Plaintiffs did not claim that such failure was a violation of the APA or request relief related to Jane and Junior's passports. Dkt. # 1 ¶66. The claims in the Complaint focused on the adjudication of the I-730 petitions. *Id.* ¶¶ 85-123. Defendants provided the requested relief, as well an access pass and instructions to help facilitate access to HKIA. Dkt. # 16 at 3; Dkt. # 17 ¶ 4. The Court concludes that Plaintiffs' mandamus and APA claims are moot because Defendants have re-affirmed the I-730 petitions, as requested in the Complaint. Dkt. # 16 at 17.

Finding that Plaintiffs' requests for relief are not based on claims pled in the Complaint, the Court concludes that it has no authority to grant the requested injunctive relief. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (holding that "[a] court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction"). Indeed, the Court is precluded from granting relief for claims in the Complaint because it has already been granted: Plaintiffs' I-730 petitions were adjudicated and re-affirmed. *See United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004) (holding that "because the requested relief was INS action and the INS had acted definitively in the plaintiffs' favor by the time the case reached us (the applicants had become citizens), mootness was the only possible conclusion we could draw").

ORDER – 7

Moreover, Plaintiffs fail to establish that they are legally entitled to evacuation assistance. As Defendants correctly point out, neither the APA nor any other statute provides the Court with jurisdiction over Defendants' evacuation efforts of unadmitted noncitizens overseas. Dkt. # 16 at 12. Plaintiffs provide no legal support or authority which authorizes the Court to compel the return of passports following an adjudication of an immigration benefit. Plaintiffs' reliance on internal State Department guidance is unavailing. *See Tarlinsky v. Pompeo*, No. 3:19-CV-659 (VLB), 2019 WL 2231908, at *3 (D. Conn. May 23, 2019) (holding that the "FAM is an internal guidance document intended for State Department employees, and its text does not bind the agency").

The Court therefore concludes that Plaintiffs are unable to demonstrate a likelihood of success on the merits as required for injunctive relief. The Court is thereby precluded from granting Plaintiffs' emergency motion for injunctive relief. Based on this conclusion, the Court need not address Defendants' alternative arguments for denial of the motion.

## V.   CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Plaintiffs' Emergency Motion for Temporary Restraining Order or Preliminary Injunction. Dkt. # 13. Although this Court is cognizant of the dire circumstances in Kabul and the challenges in addressing the significant security risks, the Court encourages Defendants to the highest degree to take all reasonable efforts to assist Plaintiffs in their evacuation efforts.

DATED this 29th day of August, 2021.

The Honorable Richard A. Jones
United States District Judge

ORDER – 8